UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **DARTAVIUS BARNES,** )<br> )<br>**Plaintiff,** )<br> )<br>vs. )<br> )<br>**CITY OF SPRINGFIELD,** a municipal )<br>corporation, **COLTON REDDING,** )<br>**BRIAN RIEBLING, ADAM** )<br>**WESTLAKE, JUAN RESENDEZ,** )<br>**NICHOLAS RENFRO, and REGAN** )<br>**MOLOHON,** )<br> )<br>**Defendants.** ) | No. 20-cv-3265 |

## DEFENDANTS' MOTION TO EXTEND DISPOSITIVE MOTION DEADLINE

NOW COME Defendants, City of Springfield, Colton Redding, Brian Riebling, Adam Westlake, Juan Resendez, Nicholas Renfro, and Regan Molohon, by and through their attorney, Steven C. Rahn, Sr. Assistant Corporation Counsel for the City of Springfield, and pursuant to Rule 56 of the Federal Rules of Civil Procedure moves this Court for the entry of an order granting summary judgment in the Defendants' favor and against Plaintiff.

## INTRODUCTION

Plaintiff filed his seven count Complaint alleging the actions of Springfield Police Officers, Defendants Colton Redding, Brian Riebling, Adam Westlake, Juan Resendez, Nicholas Renfro, and Regan Molohon unlawfully stopped, seized, and searched the Plaintiff on the evening of April 6, 2020, and failed to intervene in the search and seizure. Count I is a §1983 action against the individual Defendants alleging unlawful seizure of the Plaintiff as he was speeding away from a shooting incident. Count II alleges a §1983 action against the individual Defendants alleging

unlawful search of the Plaintiff's vehicle. Count III alleges a §1983 failure to intervene against the individual defendants.

Count IV is a state law action for false imprisonment against the individual Defendants and the City of Springfield. Counts V and VI are state law Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress actions, respectively. Finally, Count VII is an action for indemnity against the City for any judgment taken against the individual Defendants.

### **EXHIBITS FILED HEREWITH**

Submitted with and in support of this Motion are the following exhibits:

A. Deposition transcript of Plaintiff Dartavious Barnes (Exhibit A).

B. Deposition transcript of Defendant Officer Colton Redding (Exhibit B).

C. Deposition transcript of Defendant Officer Brian Riebling (Exhibit C).

D. Deposition transcript of Defendant Officer Adam Westlake (Exhibit D).

E. Deposition transcript of Defendant Officer Regan Molohon (Exhibit E).

F. Video from the body worn camera worn by Defendant Colton Redding, authenticated at Redding Dep., 46:19 – 48:18. The parties stipulated to the authenticity of the video at Barnes Dep., 37:20. The video will be referred to herein as BWC video (Exhibit F).

G. Copy of Springfield Police Department Field Case Report No. 2020-00029435 (Exhibit G).

H. Photograph of brass container with human remains, authenticated by Plaintiff as Exhibit 6 to his deposition at Barnes Dep., 21:18 (Exhibit H).

**STATEMENT OF UNDISPUTED FACTS**

1. The City is a municipal corporation which at all relevant times employed the Defendants Redding, Riebling, Westlake, Resendez, Renfro, and Molohon as police officers, which officers were at all relevant times acting under color of state law and within the course and scope of their employment (Complaint, ¶¶6 – 12, 15).

2. On April 6, 2020, Defendant Officer Redding was on patrol in his marked squad car near 16th St. and Spruce St. when he heard gunshots at or near 8:00 pm (Redding Dep, 27:22).

3. On April 6, 2020, Defendant Officer Riebling was on K-9 patrol in the parking lot at 908 South Martin Luther King Dr. when he heard gunshots at or near 8:00 pm (Riebling Dep., 23:19).

4. On April 6, 2020, Plaintiff was driving his blue Chrysler 300 on Laurel St. at or near 8:00 pm, when he heard gunshots in the area (Barnes Dep., 5:23; 7:22; 10:15).

5. Upon hearing the gunshots, Plaintiff immediately drove away from the area at a high rate of speed; in so doing, he disobeyed a stop sign at Laurel St. and Martin Luther King (Barnes Dep., 6:19; 8:16).

6. While driving towards the apparent direction of the gunshots, Officer Redding observed the blue Chrysler 300 driven by Plaintiff disobey the stop sign at Laurel St. and Martin Luther King (Redding Dep., 28:10).

7. Officer Redding then initiated a traffic stop of the blue Chrysler 300 for disobeying the stop sign (Redding Dep., 31:1).

8. Since Officer Redding also observed the blue Chrysler 300 travelling at a high rate of speed away from where he believed the gunshots had occurred, he also considered that fact to be an additional reason to stop the vehicle (Redding Dep., 31:5).

9. Officer Redding believed the driver of the blue Chrysler 300, the Plaintiff, may be related in some way to the gunshots (Redding Dep., 35:22).

10. As Officer Redding approached the Plaintiff's vehicle, radio dispatch can be heard stating that a black Chrysler 300 was seen leaving the area of the gunshots (BWC video at 1:05).

11. While Officer Redding took initial information from Plaintiff, radio dispatch can be heard stating that a "Dartavious Anderson" was believed to be involved in the shooting in some manner (BWC video at 3:02; Redding Dep. 38:23).

12. Officer Redding believed the radio reports were actually referring to the blue Chrysler 300 he had stopped and the Plaintiff, Dartavious Barnes, rather than Dartavious Anderson (Redding Dep. 41:9; 43:16; Ex. G Police Rep. p. 4).

13. Shortly thereafter, the computer assisted dispatch narrative corrected Dartavious' surname from Anderson to Barnes (Riebling Dep., 27:8).

14. Officer Redding had previously encountered Plaintiff in his work; first, during a previous shooting on 16th St., and second, when he when he accompanied the coroner in February, 2019, to inform Plaintiff that his daughter was deceased (Redding Dep., 22:16).

15. Based upon the foregoing, Officer Redding detained Plaintiff for further investigation of the shots fired incident (Redding Dep., 56:17).

16. Plaintiff exited his car at Officer Redding's request, and was placed in handcuffs (Redding Dep., 56:11; BWC video at 3:05).

17. At approximately this time, Defendant Officer Riebling arrived on the scene (Redding Dep., 63:17; Riebling Dep., 40:9).

18. As Plaintiff is being handcuffed, Officer Riebling asks the Plaintiff for permission to search his car, to which the Plaintiff consents (Barnes Dep., 20:7; Riebling Dep., 45:9; Redding Dep., 67:21, 69:8; BWC video at 3:25).

19. While consenting to the request to search the car, the Plaintiff also admitted that he had "weed" in the car (Barnes Dep., 19:19; Redding Dep., 65:11, 67:12; Riebling Dep., 42:6; BWC video at 3:27).

20. During the search of Plaintiff's vehicle, Plaintiff is placed near Officer Redding's squad car (Redding Dep., 70:16).

21. Before beginning to search the interior of Plaintiff's car, Officer Redding observed a bullet hole on the side of the car (Redding Dep., 70:20).

22. During the search of Plaintiff's car, the officers found 3 containers of suspected cannabis, with a total weight of 79.6 grams, exceeding the possession amount allowed for personal use (30 grams). The suspected cannabis was not in the proper packaging required for transporting for personal use (Ex. G Police Rep. p. 4).

23. During the search, the officer also discovered plastic baggies in the glove compartment (Redding Dep., 87:16).

24. The Plaintiff was also in possession of a digital scale (Redding Dep., 88:2).

25. Officer Redding noted in his police report narrative that based upon his training and experience, that amount of cannabis, along with a scale and plastic bags, were evidence of an intent to sell the cannabis at street level, illegally (Ex. G Police Rep. p. 4; Redding Dep. 87:12).

26. During his search of the car, Officer Riebling located a small brass object (Riebling Dep., 58:24).

27. The brass object is depicted in Exhibit H.

28. The brass object contains no markings to indicate it is an urn for human remains (Barnes Dep., 23:15).

29. Officer Riebling testified that the brass object looked similar to other containers which he had previously discovered could contain narcotics (Riebling Dep., 62:16).

30. Upon opening the container, Officer Riebling observed a brown chunky substance inside (Riebling Dep., 64:24).

31. Officer Riebling then field tested the substance in the brass container for heroin and cocaine, which was negative for both (Riebling Dep., 69:9 & 12).

32. Officer Riebling then field tested the substance in the brass container for MDNA/Ecstasy/methamphetamines, for which he noted a color change in the test kit indicating the presence of the tested-for drug (Riebling Dep., 71:9 to 18).

33. After searching the car, Officer Redding searched the side of Laurel St. for a gun or other contraband that Plaintiff may have thrown from his car. He did not find a gun or other contraband during this search (BWC video at 10:00 to 18:20).

34. After returning from his search of the roadside, Officer Redding asked Plaintiff if he would consent to processing the bullet hole in his car (Redding Dep., 92:18; BWC video at 22:55).

35. Plaintiff consented to processing his vehicle (BWC video at 23:08).

36. Plaintiff then requested to be released from the handcuffs (BWC video at 23:10).

37. Officer Redding testified that he agreed to release Plaintiff from handcuffs because he was being cooperative (Redding Dep., 93:15).

38. Officer Riebling interrupted Officer Redding before he released the handcuffs and Plaintiff was placed back in the squad car (Redding Dep., 95:8; Riebling Dep., 74:10; BWC video at 23:20).

39. Officer Riebling informed Officer Redding that he had located within Plaintiff's car a container with a powdery substance inside; Officer Riebling had field tested the substance for heroin and cocaine, both of which were negative, and then for "Molly" which test came back positive (BWC video at 23:30 – 23:48; Riebling Dep., 74:10).

40. Exhibit H is a photograph taken by Plaintiff of the container Officer Riebling found in Plaintiff's car (Barnes Dep., 21:18).

41. The officers placed the container into an evidence bag (BWC video at 24:46).

42. Officer Redding informed Plaintiff that a substance in his car had tested positive for methamphetamine, molly, ecstasy and/or MDMA (BWC video at 27:20).

43. Officer Redding read Plaintiff his *Miranda* rights (BWC video at 29:00).

44. Officer Redding shows Plaintiff the container found in his car (BWC video at 29:50).

45. Plaintiff immediately states, "That's my daughter." (BWC video at 29:54).

46. Officer Redding informs Plaintiff that they are going to give the container to Plaintiff's father, who is on the scene (BWC video at 31:41).

47. Plaintiff consents to this (BWC video at 31:45).

48. Officer Redding informs Plaintiff that he will not be arrested, and is released from handcuffs (BWC video at 34:32).

49. Officer Redding informed Plaintiff that he was going to seize the cannabis and issue Plaintiff a Notice to Appear and Plaintiff is released (BWC video at 35:42).

50. Defendant Officer Westlake was the primary investigating officer of the shots fired incident on April 6, 2020 (Westlake Dep., 12:6).

51. While on the scene of the shots fired incident, Officer Westlake determined that Dartavious Barnes was not the shooter (Westlake Dep., 14:13).

52. Officer Westlake arrived on the scene of the search of Plaintiff's car and advised Officers Redding and Riebling that he believed Plaintiff was the victim of the shots fired incident (Westlake Dep., 16:23).

53. Officer Westlake did not participate in the search of Plaintiff's car or the investigation of any drug offenses by Plaintiff (Westlake Dep., 17:24).

54. Defendant Officer Molohon was not involved in any way in the stop and search of Plaintiff's car (Molohon Dep., 25:13).

55. The record includes no information about any involvement by Defendant Officer Resendez in the stop and search of Plaintiff's car.

## ARGUMENT

**A.    Summary Judgment Standard**

> Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). However, "[t]he mere existence of some alleged factual dispute" is insufficient to defeat a motion for summary judgment. See *Lawrence v. Kenosha County*, 391 F.3d 837, 842 (7th Cir. 2004) (emphasis in original). A genuine dispute to a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. (citation omitted). Material facts are those that "'might affect the outcome of the suit' under applicable substantive law." *Id*. (citation omitted).

*Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015)

The United States Supreme Court has held in several cases that if the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24; *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-252 (1986); see also *Waldridge v. American Hoescht Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The non-movant may not rely upon mere allegations, but must present specific facts to show that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 322-326; *Buscaglia v. U.S.,* 25 F.3d 530, 534 (7th Cir. 1994). See also, *Mattos v Agarano* 590 F.3d 1082 (9th Cir. 2010).

Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Buckley Dement, Inc. v. Travelers Plan Administrators of Illinois, Inc.,* 39 F.3d 784, 787 (7th Cir. 1994) (quoting *Celotex Corp.*, 477 U.S. at 322.) While the Court construes all inferences in favor of the non-movant (see *Siliven v. Indiana Dept. of Child Services,* 635 F.3d 921, 925 (7th Cir. 2011)), to create a genuine factual dispute, any such inference must be based on something more than "speculation or conjecture." See *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion. See *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. See *id.*

B.     **The Officers Had Probable Cause to Stop the Plaintiff.**

Plaintiff admits he was speeding (40-50 mph, Barnes Dep., 6:20) and that he ignored a stop sign (Barnes Dep., 8:16) in his haste to get away from a shots fired incident.  Officer Redding observed this (Redding Dep., 28:10).  This clearly establishes probable cause for a traffic stop, *United States v. Smith*, 668 F.3d 427, 430 (7th Cir., 2012).

In addition to his observations of Plaintiff's driving, Officer Redding had additional information which contributed to his reasonable suspicion that Plaintiff may have been involved in some way to the shots fired incident:  the subject was observed speeding away from a shooting; in a car that matched the description of one involved in the incident; and a witness had named a person of interest as "Dartavious."  While the initial last name did not match, Officer Redding believed that to be a mistake, given the relatively uncommon first name and the car match.  That mistake was confirmed in short order when the last name was corrected to "Barnes."

The foregoing provided Officer Redding with a reasonable suspicion sufficient for at least a brief detention for additional investigation.

> [A]n investigatory stop, which constitutes only a limited intrusion into an individual's privacy, is reasonable, and therefore permissible, "if the officer making the stop is 'able to point to specific and articulable facts' that give rise to a reasonable suspicion of criminal activity." *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994) (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)).

*United States v. Mays*, 819 F.3d 951, 955 (7th Cir., 2016).  See also, *United States v. Wimbush*, 337 F.3d 947, 950 (7th Cir. 2003) (stop justified even without moving violation where vehicle in vicinity of shooting matched description).

Furthermore, since the incident involved a shooting, and Officer Redding did not at that time know whether the Plaintiff was a victim or perpetrator, handcuffing the Plaintiff was warranted as a precaution to neutralize any potential risk to the officer or to others.

C.  **Plaintiff Consented to the Search of his Vehicle.**

It is undisputed that Plaintiff consented to the search of his vehicle. He also acknowledged the presence of cannabis. The fact that the Plaintiff was being handcuffed as he consented does not render the consent to be coercive. The officers were investigating a shooting, so the search would be looking for weapons. Again, it is reasonable to neutralize any potential threat when searching for weapons.

Plaintiff immediately consented without hesitation; there was no evidence of coercion of any fashion (see, *United States v. Lee*, 835 F. Supp. 2d 657 (N.D. Ind., 2011)). Nor was Plaintiff's consent limited or qualified in any way. A general consent to search includes searching compartments or containers that can be opened without damage, *United States v. Calvo-Saucedo*, 409 F. App'x 21, 24 (7th Cir. 2011).

Shortly after the search began, the officers located a large amount (79 grams) of suspected cannabis, substantially in excess of the legal amount (30 grams; 410 ILCS 705/10-10(a)(1)) to carry for personal use, and not packaged in the form allowed by Illinois law for transport of cannabis for personal use.

This immediately provided probable cause for the Plaintiff's arrest on drug charges. In addition, the presence of a scale and baggies supported a potential charge of intent to distribute.

At this point, the officers had probable cause for an arrest. It was certainly reasonable to continue to search for other illegal drugs, *United States v. Green*, No. 19-CR-00293-1, 2021 U.S. Dist. LEXIS 66123, at *23 (N.D. Ill. Apr. 5, 2021).

They found a brass vial. Officer Riebling testified that he had seen small containers such as that used for transporting narcotics (Riebling Dep., 62:16). The Plaintiff acknowledged that

there were no markings on the vial which would identify it in any way as an urn for human remains (Barnes Dep., 23:15).

The officers acted reasonably to test the powdery substance inside for narcotics. Indeed, the field testing resulted in a potentially positive result for methamphetamines or MDNA, both illegal drugs (Riebling Dep., 71:9 to 18).

However, when confronted with the fact that the vial was in fact an urn containing remains of Plaintiff's child, the officers immediately acknowledged the mistake and returned the urn to the Plaintiff's father. The mistake does not negate the reasonableness of the search or the testing of the contents.

**D.    The Officers' Search of Plaintiff's Vehicle Produced Probable Cause to Arrest Plaintiff.**

As stated above, the amount of suspected cannabis in the Plaintiff's possession, coupled with the manner in which it was being transported, the scale and the baggies for potential distribution, provided probable cause for an arrest. Rather than take Plaintiff into custody, the officers served him with a notice to appear. His brief detention did not violate his constitutional rights when the officers had probable cause to arrest him and take him into custody.

**E.    The Officers are Entitled to Qualified Immunity for the Detention and Search**

Governmental employees performing discretionary functions are entitled to qualified immunity from suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights for which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (2012) (citations omitted); accord *Messerschmidt v. Millender*, 565 U.S. 546 (2012). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from

harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In determining whether an officer is entitled to qualified immunity, the court must determine, "whether his conduct violated a constitutional right and, if so, whether that right was clearly established at the time of the alleged violation." *Lopez v. Sheriff of Cook County*, 993 F.3d 981, 987 (7th Cir. 2021).

Qualified immunity shields liability from police officers "who act in ways they reasonably believe to be lawful." *Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The defense provides "ample room for mistaken judgments" and protects all but the "plainly incompetent and those who knowingly violate the law." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

In other words, qualified immunity shields officers from liability for honest mistakes. Here, the brass container did not contain narcotics, but this was an honest mistake. Pursuant to a consensual search, the officers uncovered an illegal amount of suspected cannabis and paraphernalia suggesting an intent to distribute. No clear precedent establishes that an officer in this situation may not search an unmarked container similar to those used to transport narcotics.

The officers in this case acted in good faith. At most, they made an honest mistake. They are entitled to qualified immunity.

**F.    There is No Substantial Evidence Supporting Plaintiff's Emotional Distress Counts.**

    1.    <u>As a Matter of Law, the Facts do Not Support a Cause of Action of Intentional Infliction of Emotional Distress</u>

To survive summary judgment on the [a] claim for intentional infliction of emotional distress, plaintiffs must present evidence showing that (1) the

> defendant's conduct was truly extreme and outrageous, (2) the defendant either intended to inflict emotional distress or knew there was at least a high probability that he would cause severe emotional distress, and (3) the conduct in fact caused severe emotional distress. *E.g., Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 798 N.E.2d 75, 80, 278 Ill. Dec. 228 (Ill. 2003); *McGrath v. Fahey*, 126 Ill. 2d 78, 533 N.E.2d 806, 809, 127 Ill. Dec. 724 (Ill. 1988).

*Stokes v. Board of Education*, 599 F.3d 617, 626 (7th Cir. 2010).

In order to maintain such a claim, the defendants' behavior must truly be extreme, "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community," *Stokes* 599 F.3d at 626, quoting *Feltmeier*, 798 N.E.2d at 83. IIED does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 983 (7th Cir. 2008).

Here, the officers' actions were not "so extreme as to go beyond all possible bounds of decency." They were merely doing their job. They made an honest mistake, and when the mistake was revealed, they immediately returned the vial to the Plaintiff's father. As a matter of law, the officers' actions do not support an intentional infliction of emotional distress action.

> 2. <u>As a Matter of Law, the Cause of Action of Negligent Infliction of Emotional Distress Fails Because There was no Impact Alleged or Proven</u>

In Illinois, "a direct victim's claims for negligent infliction of emotional distress must include an allegation of contemporaneous physical injury or impact." *Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, ¶ 38, 77 N.E.3d 50. The Seventh Circuit has similarly adopted the rule to cases before it applying Illinois law in pendant jurisdiction (see, e.g., *Barnes v. Anyanwu*, 391 F. App'x 549, 553 (7th Cir. 2010).

Here, the Plaintiff neither alleges he suffered a contemporaneous physical injury or impact, nor does the evidence support such a finding. At most, the Plaintiff observed a distressing event

regarding the drug testing of the remains of his deceased daughter. However, without any physical impact on him, Plaintiff's case for negligent infliction of emotional distress fails under Illinois law.

**G.     Defendant Officers Westlake, Molohon and Resendez Were Not Involved**

The Complaint includes Defendant Officers Adam Westlake, Juan Resendez, and Regan Molohon, but does not allege any specific actions those officers took that violated Plaintiff's rights. The record suggests that Officers Molohon and Resendez were never on the scene. Westlake appeared briefly, but did not take part in the stop or search. Without any allegations of wrongdoing by these defendants, the case against them must be dismissed.

## CONCLUSION

Plaintiff's case fails because the officers had both probable cause to stop his vehicle and consent to search it. That search, in turn, resulted in probable cause to arrest the Plaintiff. Both the §1983 actions and the pendant state court actions fail in the presence of probable cause.

**WHEREFORE**, Defendants pray this Court determine that there is no genuine issue of material fact and as a matter of law Defendants are entitled to summary judgment:

> **RESPECTFULLY SUBMITTED,**
> **s/ Steven C. Rahn**
> Bar Number 6188985
> Attorney for the City of Springfield, Illinois
> Sr. Assistant Corporation Counsel
> Room 313 Municipal Center East
> 800 East Monroe Street
> Springfield, Illinois 62701-1689
> Telephone: (217) 789-2393
> Fax: (217) 789-2397
> Email: steven.rahn@springfield.il.us

## CERTIFICATE OF SERVICE

      I hereby certify that on **December 21, 2022,** I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James C. Pullos
Clifford Law Offices, P.C.
120 N. LaSalle, Ste. 3100
Chicago IL 60602
jcp@cliffordlaw.com

                                        **RESPECTFULLY SUBMITTED,**
                                        **s/ Steven C. Rahn**
                                        Attorney for the City of Springfield, Illinois